# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TWIN SECURITIES, INC., *et al.*,<br><br>                   Plaintiffs,<br><br>v.<br><br>AMERICAN REALTY CAPITAL<br>PROPERTIES, INC., *et al.*,<br><br>                   Defendants. | Civil Action No.: 1:15-cv-01291-AKH |
| HG VORA SPECIAL OPPORTUNITIES<br>MASTER FUND, LTD.,<br><br>                   Plaintiff,<br><br>v.<br><br>AMERICAN REALTY CAPITAL<br>PROPERTIES, INC., *et al.*,<br><br>                   Defendants. | Civil Action No.: 1:15-cv-04107-AKH |

(*caption continued on following page*)

**DIRECT ACTION PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
<u>DEFENDANT AMERICAN REALTY CAPITAL PROPERTIES</u>**

BLACKROCK ACS US EQUITY TRACKER
FUND, *et al.*,

                         Plaintiffs,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

                         Defendants.

Civil Action No.: 1:15-cv-08464-AKH

PIMCO FUNDS: PIMCO DIVERSIFIED
INCOME FUND, *et al.*,

                         Plaintiffs,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

                         Defendants.

Civil Action No.: 1:15-cv-08466-AKH

CLEARLINE CAPITAL PARTNERS LP, *et al.*,

                         Plaintiffs,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

                         Defendants.

Civil Action No.: 1:15-cv-08467-AKH

(*caption continued on following page*)

PENTWATER EQUITY OPPORTUNITIES
MASTER FUND LTD., *et al.*,

               Plaintiffs,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

               Defendants.

Civil Action No.: 1:15-cv-08510-AKH

ETON PARK FUND, L.P. and ETON PARK
MASTER FUND, LTD.,

               Plaintiffs,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

               Defendants.

Civil Action No.: 1:16-cv-09393-AKH

RELIANCE STANDARD LIFE INSURANCE
COMPANY, *et al.*,

               Plaintiffs,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

               Defendants.

Civil Action No.: 1:17-cv-02796-AKH

(*caption continued on following page*)

| | |
|---|---|
| JET CAPITAL MASTER FUND, L.P., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN REALTY CAPITAL<br>PROPERTIES, INC., *et al.*,<br><br>                    Defendants. | Civil Action No.: 1:15-cv-00307-AKH |
| ARCHER CAPITAL MASTER FUND, L.P., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN REALTY CAPITAL<br>PROPERTIES, INC., *et al.,*<br><br>                    Defendants. | Civil Action No.: 1:16-cv-05471-AKH |
| ATLAS MASTER FUND, LTD., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN REALTY CAPITAL<br>PROPERTIES, INC., *et al.*,<br><br>                    Defendants. | Civil Action No.: 1:16-cv-05475-AKH |
| FIR TREE CAPITAL OPPORTUNITY<br>MASTER FUND, L.P., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN REALTY CAPITAL<br>PROPERTIES, INC., *et al.,*<br><br>                    Defendants. | Civil Action No.: 1:17-cv-04975-AKH |

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ........................................................................... ii

TABLE OF AUTHORITIES .......................................................................... iii

DECLARATION ........................................................................................... iiv

EXHIBITS TO DECLARATION.................................................................. iiv

I.       INTRODUCTION ............................................................................... 1

II.      FACTUAL AND PROCEDURAL BACKGROUND........................... 3

      A.      ARCP and the AFFO Metric....................................................... 3

      B.      The Restatement........................................................................... 4

            1.      ARCP Admits that it Misstated AFFO and Net Loss in the
                 Company's 2013 Quarterly and Annual Reports........................ 5

            2.      ARCP Admits that its Senior Management Learned of the
                 Company's Accounting Misstatements in 2014, but Chose
                 Not to Correct Them and Instead Tried to Cover Them Up........ 5

            3.      ARCP Admits to Making False and Misleading Statements
                 about the Efficacy of the Company's Controls over
                 Financial Reporting................................................................... 6

      C.      CAO McAlister Pleads Guilty to, and CFO Block is Convicted of,
            Criminal Securities Fraud in Connection with their Intentional
            Misstatements of ARCP's AFFO ............................................... 9

      D.      The Direct Action Plaintiffs' Claims Against ARCP ............... 11

III.     ARGUMENT ..................................................................................... 13

      A.      ARCP Admits it Misstated AFFO in its 2013 and 2014 Periodic
            Reports, Leaving No Genuine Dispute as to the Issue of Falsity ......... 14

      B.      ARCP's Admissions that It Knew of and Recklessly Disregarded
            the AFFO and Net Loss Misstatements in the 2014 Quarterly
            Reports Leave No Genuine Factual Dispute on the Issue of
            Scienter ..................................................................................... 16

IV.      CONCLUSION.................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*In re Adelphia Commc'ns Corp.*,
No. 03-md-1529, 2006 WL 2463355 (S.D.N.Y. Aug. 23, 2006) .........................................2, 13

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)........................................................................................................13

*Ali v. City of N.Y.*,
No. 11-cv-5469, 2012 WL 3958154 (S.D.N.Y. Sept. 5, 2012) ...............................................13

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).......................................................................................12

*AUSA Life Ins. Co. v. Ernst & Young*,
206 F.3d 202 (2d Cir. 2000)........................................................................................................17

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2006).......................................................................................17

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*,
No. 16-cv-80056, 2016 WL 9413421 (S.D. Fla. June 26, 2016)..............................................17

*Delchi Carrier SpA v. Rotorex Corp.*,
71 F.3d 1024 (2d Cir. 1995)........................................................................................................15

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
612 F. Supp. 2d 330 (S.D.N.Y. 2009).......................................................................................13

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)........................................................................................................16

*In re Livent, Inc. Noteholders Sec. Litig.*,
355 F. Supp. 2d 722 (S.D.N.Y. 2005).......................................................................................14

*In re Marsh & McLennan Cos. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006).......................................................................................17

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)........................................................................................................................12

*Mishkin v. Ageloff*,
299 F. Supp. 2d 249 (S.D.N.Y. 2004).......................................................................................12

*Qualis Care, L.P. v. Hall*,
No. 95-cv-4955, 1999 WL 683564 (S.D.N.Y. Sept. 1, 1999) .................................................15

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*,
570 F.2d 38 (2d Cir. 2007)...................................................................................................17

*Ross v. A.H. Robins Co.*,
607 F.2d 545 (2d Cir. 1979)................................................................................................12

*S. Austin Coalition Cmty. Council v. SBC Commc'ns Inc.*,
274 F.3d 1168 (7th Cir. 2001) ............................................................................................13

*SEC v. Monterosso*,
768 F. Supp. 2d 1244 (S.D. Fla. 2011) ..............................................................................14

*SEC v. Universal Express, Inc.*,
475 F. Supp. 2d 412 (S.D.N.Y. 2007).................................................................................17

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008)................................................................................................16

*Tellabs v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................................16

*United States v. Agosto-Vega*,
617 F.3d 541 (1st Cir. 2010)...............................................................................................19

*United States v. Block*,
No. 16-cr-595, 2018 WL 722854 (S.D.N.Y. Feb. 6, 2018) ...........................................11, 18

*In re WorldCom, Inc. Sec. Litig.*,
346 F. Supp. 2d 628 (S.D.N.Y. 2004).................................................................................14

**RULES**

Fed. R. Civ. P. 56.....................................................................................................................13

L. Civ. R. 56.1............................................................................................................................3

## DECLARATION

Declaration of Lawrence M. Rolnick in Support of Direct Action Plaintiffs' Motion for Partial Summary Judgment against Defendant American Realty Capital Properties, Inc., dated March 28, 2018.

## EXHIBITS TO DECLARATION

Exhibit

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-K, filed on February 27, 2014 ........................................................................................1

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q, filed on May 6, 2013 ...................................................................................................2

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q, filed on August 6, 2013 ..............................................................................................3

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q, filed on November 7, 2013...........................................................................................4

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q, filed on May 8, 2014 ...................................................................................................5

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q, filed on July 29, 2014 .................................................................................................6

American Realty Capital Properties, Inc. Form 8-K, filed on October 29, 2014 ............................7

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 8-K, filed on March 2, 2015 ...................................................................................................8

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-K/A, filed on March 2, 2015 ...................................................................................................9

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q/A, filed on March 2, 2015 ...................................................................................................10

Relevant Excerpts from the American Realty Capital Properties, Inc. Form 10-Q/A, filed on March 2, 2015 ...................................................................................................11

Indictment Filed against Brian S. Block on or about September 7, 2016.........................................12

Relevant Excerpts from the Transcript of the Trial in *United States v. Block*, No. 16-cr-595 (S.D.N.Y. June 14, 2017) ...................................................................13

Relevant Excerpts from the Transcript of the Trial in *United States v. Block*,
No. 16-cr-595 (S.D.N.Y. June 19, 2017) .............................................................................14

Relevant Excerpts from the Transcript of the Trial in *United States v. Block*,
No. 16-cr-595 (S.D.N.Y. June 20, 2017) .............................................................................15

Verdict Form  in *United States v. Block*, No. 16-cr-595 (S.D.N.Y. June 30, 2017) .........................16

Relevant Excerpts from the Transcript of the Sentencing in *United States v. Block*,
No. 16-cr-595 (S.D.N.Y. Nov. 8, 2017) .............................................................................17

Information filed against Defendant Lisa P. McAlister on June 29, 2016 .......................................18

Transcript of the Plea Allocution in *United States v. McAlister*, No. 16-cr-653
(S.D.N.Y. June 29, 2016) .............................................................................................19

## I.   <u>INTRODUCTION</u>

The Direct Action Plaintiffs bring this Motion for Partial Summary Judgment against Defendant American Realty Capital Properties ("ARCP" or the "Company") based on the Company's unequivocal admissions in its March 2015 financial restatements.  These admissions have now been corroborated by the guilty plea of the Company's former Chief Accounting Officer, Lisa McAlister ("McAlister"), and the criminal conviction of its former Chief Financial Officer, Brian Block ("Block").

In the fall of 2014, ARCP's Audit Committee opened an investigation into ARCP's accounting practices in response to concerns raised by an internal whistleblower.  The investigation was conducted over a period of several months with the aid of outside accountants and legal counsel.  On October 29, 2014, ARCP disclosed the preliminary results of that investigation in a public filing with the SEC.  ARCP warned investors that the "financial statements and other financial information contained in" ARCP's previously filed 2013 annual report and its quarterly reports for the first two quarters of 2014 "should no longer be relied upon."  The Company's Audit Committee further found that ARCP's internal controls over financial reporting were materially deficient.

In March 2015, after the conclusion of its internal investigation, ARCP restated its previously reported financial statements for each and every year since the Company went public in 2011 (the "Restatement").  In the Restatement, ARCP admitted that its reports previously filed with the SEC were riddled with accounting errors and financial manipulations, including by falsely reporting its most important performance metric – Adjusted Funds From Operations, or "AFFO" – with the magnitude of the overstatement reaching nearly 100% in certain quarters.

The Company further admitted that its reported net losses were repeatedly understated during the relevant period by as much as 26%.

The Company further admitted in the Restatement that senior management was aware of the errors prior to filing of the first quarter 2014 quarterly report, "but allowed the report to be filed without completing an analysis of the errors" in order to maintain reported AFFO within the Company's previously issued guidance.  As for the quarterly report for the second quarter of 2014, the Company also admitted that the AFFO overstatements in the first quarter 2014 financials "were intentionally not corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014."

These admissions leave no genuine dispute of material fact about core aspects of ARCP's liability in this case, including:  (1) the falsity of ARCP's reported AFFO and net loss in the Company's 2013 SEC filings and its filings for first two quarters of 2014, as well as Defendants' statements in those reports about the accuracy of ARCP's reported financials and the effectiveness of the Company's internal controls; and (2) ARCP's scienter as to the false AFFO figures and false certifications about the Company's internal controls contained in its quarterly reports for the first two quarters of 2014.

For these reasons, and as discussed further below, the Direct Action Plaintiffs are entitled to partial summary judgment on these core elements of liability, which will inure to the benefit of the parties and Court by streamlining issues to be resolved at trial.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, No. 03-md-1529, 2006 WL 2463355, at *4 n.4 (S.D.N.Y. Aug. 23, 2006) (granting partial summary judgment and explaining that "judicial economy is promoted any time [an] issue is removed from a case").

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   ARCP and the AFFO Metric

ARCP is a publicly traded real estate investment trust ("REIT").  The Company generates income from the rents it receives from the commercial properties it owns, and distributes income, less certain fees, in the form of dividends to its shareholders.

"Adjusted funds from operations," or "AFFO" is the key financial metric that ARCP provides to investors to help them value the Company's stock.  AFFO quantifies the cash flows that ARCP receives from the leasing of its properties to commercial tenants by removing from the Company's net income or loss the gains incurred and losses suffered by ARCP that are not related to the actual leasing of its properties.  (SUF ¶ 5.)[1]  As ARCP repeatedly assured investors, AFFO provides "a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing, and investing activities[]" than if the Company just disclosed its income or loss.  (SUF ¶ 3.)

As relevant to this Motion, ARCP's periodic filings for each quarter of 2013, as well as the 2014 first and second quarters, reported its AFFO, which purportedly was calculated on a "net" basis. (SUF ¶¶ 2, 5.)[2]  During the relevant period, the Company described its "primary

---

[1] "SUF __" refers to the Local Civil Rule 56.1 Statement of Undisputed Material Facts filed in connection herewith.

[2] As used herein, the "2013 First Quarter Report" refers to ARCP's quarterly report filed on Form 10-Q for the quarter ended March 31, 2013; the "2013 Second Quarter Report" refers to ARCP's quarterly report filed on Form 10-Q for the quarter ended June 30, 2013; the "2013 Third Quarter Report" refers to ARCP's quarterly report filed on Form 10-Q for the quarter ended September 30, 2013; the "2013 Annual Report" refers to ARCP's annual report filed on Form 10-K for the year ended December 31, 2013; the "2014 First Quarter Report" refers to ARCP's quarterly report filed on Form 10-Q for the quarter ended March 31, 2014; and the "2014 Second Quarter Report" refers to ARCP's quarterly report filed on Form 10-Q for the quarter ended June 30, 2014.  The 2013 First, Second, and Third Quarter Reports and the 2013

business objective" as generating "dependable monthly cash dividends from a constant and predictable level of funds from operations . . . and [AFFO] per share . . . ."  (SUF ¶ 4.)

    **B.**    <u>**The Restatement**</u>

On October 29, 2014, ARCP publicly disclosed in a filing with the SEC pursuant to the federal securities laws that investors should no longer rely upon the financial information contained in the Company's 2013 Annual Report, 2014 First Quarter Report, and 2014 Second Quarter Report.  (SUF ¶ 6.)  ARCP's October 29, 2014 Form 8-K also disclosed that the Audit Committee, while conducting an investigation into "concerns regarding financial practices and other matters," had uncovered flaws in the Company's internal controls.  (SUF ¶ 7.) Furthermore, the Company announced that it had identified ***deliberate*** accounting errors in the 2014 First Quarter Report and the 2014 Second Quarter Report, and that the Audit Committee had requested that McAlister and Block resign from their positions at ARCP as a result. (SUF ¶ 8.)

On March 2, 2015, ARCP filed with the SEC a restatement of its financial results for fiscal year 2012, fiscal year 2013, and the first two quarters of 2014.  (SUF ¶ 10.)  ARCP made the Restatement after its Audit Committee completed its months-long "thorough and independent investigation" with the help of independent and sophisticated legal and accounting advisors Weil, Gotshal & Manges and Ernst & Young, respectively. (SUF ¶ 11.)

In the Restatement, the Company admitted that:  (i) ARCP had significantly overstated AFFO in 2013; (ii) the overstatement had come to the attention of senior management prior to the release of the 2014 First Quarter Report; (iii) senior management intentionally failed to

---

Annual Report are referred to collectively as the "2013 Reports."  The 2014 First and Second Quarter Reports are referred to collectively as the "2014 Quarterly Reports."

correct the misreported AFFO figure or prevent AFFO from being overstated again in the 2014 First Quarter Report; (iv) senior management intentionally made improper adjustments in the 2014 Second Quarter Report in order to cover up the prior AFFO misrepresentations; and (v) there were material weaknesses and widespread deficiencies in ARCP's internal controls and disclosure controls and procedures.  (SUF ¶ 12.)

### 1.   ARCP Admits that it Misstated AFFO and Net Loss in the Company's 2013 Quarterly and Annual Reports

ARCP admitted in the Restatement that it significantly misstated ARCP's financial condition in its 2013 Annual Report by overstating AFFO and understating net loss.  AFFO was overstated in each quarter of 2013, and on an annual basis.  Specifically, ARCP overstated AFFO in the 2013 First Quarter Report by $16.5 million, or 95%; the 2013 Second Quarter Report by $14.1 million, or 24%; the 2013 Third Quarter Report by $4.4 million, or 10.4%; and the 2013 Annual Report by $44 million, or 18.6%.  (SUF ¶ 13.)

ARCP further admitted in the Restatement that, in addition to its AFFO misstatements, the 2013 Annual Report understated net loss attributable to shareholders, a GAAP figure, by nearly $16.8 million, or 3.5%.  (SUF ¶ 14.)

### 2.   ARCP Admits that its Senior Management Learned of the Company's Accounting Misstatements in 2014, but Chose Not to Correct Them and Instead Tried to Cover Them Up

In the Restatement, ARCP also admitted that "senior management," including McAlister and Block, knew no later than May 8, 2014 (the date the 2014 First Quarter Report was filed) about the improper accounting with respect to AFFO in the 2013 Annual Report.  (SUF ¶ 15.) But instead of correcting the overstatements in the 2013 Annual Report and preventing those same misstatements from being repeated, ARCP "allowed the [2014 First Quarter Report] to be filed without completing an analysis of the errors."  (SUF ¶ 16.)  The Restatement explained the

reason for these intentional errors:  "[s]enior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance and, for the first two quarters of 2014, sought to maintain reported AFFO within the Company's 2014 guidance range of $1.13 to $1.19 per share announced at the end of 2013."  (SUF ¶ 17.)

The 2014 First and Second Quarter Reports, like the 2013 Annual Report, also misstated the Company's AFFO.  (SUF ¶ 19.)  For the first quarter of 2014, ARCP overstated AFFO by $38.5 million, or 26.1%.  (SUF ¶ 20.)   In the second quarter of 2014, ARCP's "errors" in AFFO accounting were known to "senior management," including among others McAlister and Block, but "intentionally not corrected, and other AFFO and financial statement errors were intentionally made [in the 2014 Second Quarter Report], resulting in an overstatement of AFFO and an understatement of the Company's net loss" in that Report.  (SUF ¶ 18.)  The Company has admitted that, in the 2014 Second Quarter Report, ARCP intentionally overstated AFFO by $19.3 million, or 9.4%, and understated net loss by $14.4 million, or 35.7%.  (SUF ¶¶ 21-22.)  It also overstated AFFO for the six months ending June 30, 2014, by $52.4 million, or 14.8%. (SUF ¶ 23.)

### 3.   ARCP Admits to Making False and Misleading Statements about the Efficacy of the Company's Controls over Financial Reporting

In addition to its misstatements concerning the Company's AFFO and net loss, ARCP also admitted in the Restatement that it made false statements in each of ARCP's periodic reports about the effectiveness of ARCP's internal controls over financial reporting and disclosure controls and procedures.  These representations, and their attendant certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications"), are provided by public companies like ARCP to assure investors that safeguards exist to ensure the accuracy of financial reporting and that material information will be publicly disclosed.  ARCP admitted in the Restatement,

however, that its internal controls were ineffective and not as represented in the 2013 Reports and the 2014 Quarterly Reports.  (SUF ¶ 24.)

*2013 Reports.*  In each of ARCP's 2013 Reports, the Company represented that ARCP's "internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with [GAAP]."  (SUF ¶ 25.)  ARCP further told investors that "management assessed the effectiveness of our internal control over financial reporting as of" the year ended December 31, 2013, and, based on that assessment, "management believes that . . . our internal control over financial reporting is effective."  (SUF ¶ 26.)  As to ARCP's disclosure controls and procedures, the Company represented specifically that such procedures were effective in accurately and timely "recording, processing, summarizing and reporting" its financial and other material information.  (SUF ¶ 27.)  Additionally, in their respective SOX Certifications, both Block and Defendant Nicholas Schorsch ("Schorsch"), ARCP's former Chairman and Chief Executive Officer, certified their involvement in the design and evaluation of the effectiveness of ARCP's internal controls.  (SUF ¶ 28.)  These internal controls were purportedly "[d]esigned" "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]."  (SUF ¶ 29.)

The Company has now admitted in the Restatement that its prior 2013 statements and certifications were false when made.  Specifically, the Company has admitted that "the Company's internal control over financial reporting was not effective as of December 31, 2013."  (SUF ¶ 30.)  Moreover, Grant Thornton, ARCP's independent auditor, has attested that ARCP did not maintain effective internal controls during 2013 despite the Company previously having said otherwise in the 2013 Annual Report.  (SUF ¶ 33.)  Citing to "management['s]" own

admissions, Grant Thornton highlighted a number of "material weakness[es]" in ARCP's "internal control over financial reporting," which Grant Thornton described as those "deficienc[ies]" or the "combination of control deficiencies" that would result in the "reasonable possibility that a material misstatement of [ARCP's] annual or interim financial statements will not be prevented or detected on a timely basis."  (SUF ¶ 34.)  These "material weaknesses" included "the Company not maintaining and applying adequate policies and procedures, including those related to the accounting close process, critical accounting estimates and non-routine transactions."  (*Id.*)

*2014 Quarterly Reports.*  In each of the 2014 First Quarter Report and 2014 Second Quarter Report, the Company also represented that "under the supervision and with the participation of [Schorsch] and [Block], [the Company] carried out an evaluation of the effectiveness of our disclosure controls and procedures . . . and determined that the disclosure controls and procedures are effective."  (SUF ¶ 35.)   In their respective SOX Certifications to the Reports, both Schorsch and Block again certified their involvement in the design and evaluation of the effectiveness of ARCP's internal controls, assuring investors that "[b]ased on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to" the first and second quarters. (SUF ¶ 36.)

Like the similar statements made in the 2013 Reports, ARCP has now admitted that these foregoing statements were false when made.  (SUF ¶ 37.)  Specifically, the Company admitted in the Restatement that its "disclosure controls and procedures were not effective at June 30, 2014." (SUF ¶ 38.).  Indeed, ARCP has confirmed that its senior management (including McAlister and

Block, among others), knew prior to the 2014 Quarterly Reports being filed that the Company's methodology for calculating AFFO was false and misleading. (SUF ¶¶ 12, 15.) Yet ARCP carried over those same misstatements into the first quarter of 2014 without disclosing that they were wrong. (SUF ¶¶ 12, 16, 18.)

### C.   CAO McAlister Pleads Guilty to, and CFO Block is Convicted of, Criminal Securities Fraud in Connection with their Intentional Misstatements of ARCP's AFFO

ARCP's admissions in the Restatement have now been confirmed and corroborated by the guilty plea and criminal conviction of ARCP's former CAO, McAlister, and the unanimous jury verdict and criminal conviction of its former CFO, Block.[3]

During her plea allocution, McAlister admitted that she learned prior to filing the 2014 First Quarter Report that the AFFO figures within that filing were erroneous and overstated ARCP's AFFO. (SUF ¶ 43.) However, McAlister did nothing to correct or prevent the fraudulent 2014 First Quarter Report from being filed. (*Id.*) In connection with the 2014 Second Quarter Report, McAlister admitted that she and Block "agreed to falsely inflate the AFFO calculation for the second quarter of 2014 and for the year to date 2014 that were to be reported in the filing." (SUF ¶ 44.) McAlister admitted that "[t]his conduct involved inflating numbers for a particular line item that had no valid basis," and that she and Block "inflated the figures to hide the first quarter error and to create the appearance that the company's performance was in line with analyst expectations and on track to meet the company's full year AFFO guidance." (SUF ¶ 45.) McAlister further admitted that "[a]s a result of this conduct [she and Block]

---

[3] The Information filed against McAlister asserts counts including securities fraud and conspiracy to commit securities fraud. (SUF ¶ 41.) McAlister waived her right to prosecution by indictment and pled guilty in this Court to all four counts asserted in the Information. (SUF ¶ 42.) The Indictment against Block asserts counts including securities fraud and conspiracy to commit securities fraud. (SUF ¶ 39.) Block's case was tried to a jury in June 2017. (SUF ¶ 40.) The jury convicted Block on all counts, including securities fraud. (*Id.*)

intentionally misled investors, the public and the SEC about [AFFO] by an amount [she] knew investors would consider important."  (SUF ¶ 46.)

In her testimony during Block's trial, McAlister also admitted that she allowed the 2014 First Quarter Report to be filed knowing that its AFFO calculations were false.  She further testified that she and Block intentionally carried those fraudulent AFFO calculations over to the 2014 Second Quarter Report (SUF ¶ 47), and in furtherance of the fraud they prepared an AFFO schedule for inclusion in the 2014 Second Quarter Report with an "unsupported adjustment in the deferred financing cost line item."  (SUF ¶ 50.)  McAlister admitted that she and Block "fraudulently inputted a $12 million number in our filing," which "was a material issue."  (SUF ¶ 51.)  She admitted that they "plugged" the fraudulent $12 million figure into the 2014 Second Quarter Report, even though she knew at the time that "[y]ou just can't plug numbers.  You have to have analysis and [a] basis that ties back to books and records."  (SUF ¶ 53.)  Ryan Steel, ARCP's Director of Financial Reporting, gave identical testimony.  (SUF ¶ 54 (Steel:  "I say to Mr. Block and Ms. McAlister, 'We can't use that.  We don't have any support for that.  There's nothing that supports those numbers.'").)

The jury heard testimony that Block met with McAlister and Steel in Block's office on the evening before the 2014 Second Quarter Report was filed with the SEC.  (SUF ¶ 48.)  During that meeting, Block knowingly inserted fabricated numbers into ARCP's financial spreadsheets to fraudulently inflate the reported AFFO and AFFO per share calculations.  (SUF at ¶ 52 (McAlister: "It was a -- what I would call sort of result driven in that it was the exact number that you needed to put in so that the AFFO and AFFO per share calculated to what it needed to be.").) The jury also heard McAlister admit that ARCP CEO and Chairman Schorsch was on the phone

with Block and McAlister before the 2014 Second Quarter Report was filed, giving Block instructions as Block manipulated the Company's reported AFFO figures.  (SUF ¶ 49.)

On November 8, 2017, Judge Oetken sentenced Block to eighteen months in federal prison.  (Ex. 17 at 72:6-8.)  In issuing Block's sentence, Judge Oetken stated that "Mr. Block participated in a scheme to manipulate the financial results of the company by inflating [AFFO,] a key non-GAAP metric . . . ."  (*Id.* at 68:10-13.)  Following Block's sentencing, ARCP (in the guise of VEREIT, Inc., as the Company is now known) filed a motion for restitution against Block under the Mandatory Victim Restitution Act, 18 U.S.C. § 366A, arguing among other things that the Company was a "victim" of Block's conduct.  *United States v. Block*, No. 16-cr-595, 2018 WL 722854, at *1 (S.D.N.Y. Feb. 6, 2018).  Summarizing the trial evidence, Judge Oetken denied ARCP's motion, finding that not only was ARCP not a victim, it is "more accurately regarded as a coconspirator" of Block's.  *Id.* at *1, *4.  Judge Oetken further explained that "Block's actions fall squarely within the scope of criminal conduct that is attributable to a corporate employer."  *Id.* at *3.

### D.      The Direct Action Plaintiffs' Claims Against ARCP

The Direct Action Plaintiffs each assert claims in the above-captioned actions against ARCP for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act").  All Direct Action Plaintiffs allege Section 10(b) and common law fraud claims in connection with ARCP's AFFO and net loss misstatements in the 2014 Quarterly Reports; certain Direct Action Plaintiffs also assert Section 10(b) and common law fraud claims against ARCP in connection with the Company's misstatements of AFFO and net loss in ARCP's 2013 periodic reports; certain other Direct Action Plaintiffs assert Section 10(b) and common law fraud claims against ARCP in connection with the Company's internal controls and disclosure controls and procedures misstatements in the 2013 Reports and/or the 2014 Quarterly Reports;

and certain Direct Action Plaintiffs also assert claims against ARCP under Section 18 of the Exchange Act in connection with ARCP's misstatements of AFFO and net loss in the 2013 Reports.

A claim under Section 10(b) of the Exchange Act or New York common law fraud requires proof of the following elements:  a false statement or omission; materiality; scienter; a connection between the misrepresentation and the purchase or sale of a security; reliance; loss causation; and damages.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011); *Mishkin v. Ageloff*, 299 F. Supp. 2d 249, 254 (S.D.N.Y. 2004) (entering summary judgment as to Section 10(b) liability and common law fraud concurrently, noting that the elements of fraud "essentially reflect those applicable to [Section] 10(b) liability").  To succeed on their claims under Section 18 of the Exchange Act, by contrast, the Direct Action Plaintiffs need to show only that ARCP made or caused to be made a misstatement or omission in a document filed with the SEC; materiality; as well as that the Direct Action Plaintiffs relied on that misstatement or omission.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 478 (S.D.N.Y. 2005); *see also Ross v. A.H. Robins Co.,* 607 F.2d 545, 556 (2d Cir. 1979) ("A plaintiff seeking recovery under § 18 . . . must merely plead and prove that a document filed [under the Exchange Act] contains a material misstatement or omission.").

Most relevant for the purposes of this motion, and as described in more detail below, the admissions in the Restatement satisfy the falsity element of the Direct Action Plaintiffs' Section 10(b), common law fraud and Section 18 claims in connection with the 2013 Reports and the 2014 Quarterly Reports, and the scienter element of the Section 10(b) and common law fraud claims in connection with the 2014 Quarterly Reports.

III.   **ARGUMENT**

A party may seek summary judgment on any claim or defense, or any part of a claim or defense.  Fed. R. Civ. P. 56(a).  Rule 56(b) provides that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  *See also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005) ("As to the timing of the motion, summary judgment may be sought at any time after a pleading is served.").

Summary judgment is appropriate where the record establishes that there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law, Federal Rule of Civil Procedure 56(a), and is not contingent upon the parties having completed discovery.  *See Ali v. City of N.Y.*, No. 11-cv-5469, 2012 WL 3958154, at *3 (S.D.N.Y. Sept. 5, 2012) ("[T]here is no general right to discovery prior to the entry of summary judgment . . . .").  Where, as is the case here, a defendant's liability is admitted, partial summary judgment promotes judicial economy by streamlining the case and resolving as a matter of law those issues about which there is no genuine dispute.  *See Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 346 (S.D.N.Y. 2009) ("District courts may mitigate the expense of litigation by resolving motions for summary judgment early in the case -- in advance of discovery, if appropriate." (quoting *S. Austin Coalition Cmty. Council v. SBC Commc'ns Inc.*, 274 F.3d 1168, 1171 (7th Cir. 2001))); *Adelphia*, 2006 WL 2463355, at *4 n.4.

Given ARCP's admissions in the Restatement, as corroborated by McAlister's plea and the facts adduced in support of Block's criminal conviction, ARCP cannot reasonably dispute here that it falsely reported AFFO and net loss in the 2014 Quarterly Reports and the 2013 Reports, and that management was aware of the AFFO, net loss and internal controls misstatements in the Company's 2014 quarterly reports before those reports were filed.

A.     **ARCP Admits it Misstated AFFO in its 2013 and 2014 Periodic Reports, Leaving No Genuine Dispute as to the Issue of Falsity**

There is no genuine dispute of fact that ARCP made false and misleading statements in each of the 2013 Reports and 2014 Quarterly Reports.  According to the Restatement, AFFO was overstated, and net loss understated, as follows:

- 2013 First Quarter Report:  AFFO overstated by $16.5 million (95%) and AFFO per share overstated by $0.10 (100%).

- 2013 Second Quarter Report:  AFFO overstated by $14.1 million (24%) and AFFO per share overstated by $0.01 (5.6%).

- 2013 Third Quarter Report:  AFFO overstated by $4.4 million (10.4%) and AFFO per share overstated by $0.02 (7.1%).

- 2013 Annual Report:  ARCP overstated AFFO by $44 million (18.6%) and AFFO per share by 0.20 (23%), and understated net loss by 16.8 million (3.5%).

- 2014 First Quarter Report:  ARCP overstated AFFO by $38.5 million (26.1%).

- 2014 Second Quarter Report:  ARCP overstated AFFO by $19.3 million (9.4%) and understated net loss by 14.4 million (35.7%); AFFO overstated for the six-month period ended June 30, 2014 by $52.4 million (14.8%).

(SUF ¶¶ 15-16, 21-25.)

Given the Company's formal Restatement and the conclusive admissions therein, there is no legitimate dispute that the reported AFFO and net loss set forth in the financial statements covered by the Restatement were false and misleading.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d 722, 730 (S.D.N.Y. 2005) (holding for purposes of summary judgment that where "a restatement of earnings was required due to numerous accounting irregularities . . . during the prior reporting periods," the earlier financial statements are conclusively false); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 660-61 (S.D.N.Y. 2004) (entering partial summary judgment in plaintiff's favor because defendants "concede[d]" that financial statements were incorrect); *SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1262 (S.D. Fla. 2011) (entering

summary judgment and holding that where, as here, a company restates earnings and amends periodic reports to "correct" revenue, there is no genuine dispute that the incorrect revenue figures were "misrepresentations or false statements"); *see also Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1028 (2d Cir. 1995) (affirming grant of plaintiff's motion for summary judgment based on party's "ample admissions"); *Qualis Care, L.P. v. Hall*, No. 95-cv-4955, 1999 WL 683564, at *3 (S.D.N.Y. Sept. 1, 1999) (granting summary judgment based on party's admissions, "any one of which is sufficient to ground liability under Rule 10b-5").

The Company also admitted in the Restatement that the following statements in the MD&A sections of the 2013 Reports and 2014 Quarterly Reports and their accompanying SOX Certifications (signed by CEO Schorsch and CFO Block) were false and misleading:

- that "[b]ased on our assessment, our management believes that, as of December 31, 2013, our internal control over financial reporting is effective";

- that "[o]ur internal control over financial reporting is designed to provide reasonable assurance regarding . . . the preparation of financial statements in accordance with [GAAP]";

- that "[Schorsch and Block] have . . . [e]valuated the effectiveness of [ARCP's] disclosure controls and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures," namely, that those controls and procedures were effective; and

- that "[Schorsch and Block] have disclosed . . . to [ARCP's] auditors and the audit committee of [ARCP's] board of directors . . . [a]ll significant deficiencies and material weakness in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect" ARCP's ability to accurately report financial information. (*Id.*)

(SUF ¶¶ 28-34; Ex. 1 at 93, SOX Certifications thereto.)   Indeed, Grant Thornton, ARCP's independent auditor, has attested that ARCP did not maintain effective internal controls during 2013 (despite the Company repeatedly saying otherwise), and highlighted a number of "material weakness[es]" in ARCP's "internal control over financial reporting."   (SUF ¶¶ 35-36.)   And, the Company has admitted that its control environment actually got even worse in 2014.   (SUF

¶ 39.)  In light of the Company's admissions, there is no genuine dispute that ARCP's statements concerning the effectiveness of its internal controls during 2013 and the first half of 2014 were false.

### B.    ARCP's Admissions that It Knew of and Recklessly Disregarded the AFFO and Net Loss Misstatements in the 2014 Quarterly Reports Leave No Genuine Factual Dispute on the Issue of Scienter

Partial summary judgment on the issue of scienter is warranted as well.  In the context of a securities fraud violation, scienter refers to "a mental state embracing intent to deceive, manipulate, or defraud" investors.  *See Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  A fraud plaintiff may prove scienter through facts that demonstrate either conscious misbehavior or recklessness, or that the defendant had both the motive and opportunity to commit the fraud.  *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).  Because corporate defendants can only ever act through their officers and executives, the Direct Action Plaintiffs only need to demonstrate that "an agent of [ARCP] committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to the corporation," to obtain summary judgment against ARCP.  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).  ARCP's admissions in the Restatement, and the corroborative facts adduced in McAlister's and Block's criminal proceedings, conclusively establish for purposes of the Direct Action Plaintiffs' Section 10(b) and common law fraud claims that the Company's misstatements in both the 2014 First Quarter and 2014 Second Quarter Reports were made with scienter.

ARCP has not only admitted the AFFO figures in the 2014 First Quarter Report were false, but also that "members of senior management ***were aware of*** . . . [the] errors ***but allowed the report to be filed*** without completing an analysis of the errors."  (Ex. 10, Explanatory Note (emphasis added).)  And for the 2014 Second Quarter Report, ARCP admitted the AFFO "errors

in the first quarter were ***intentionally not corrected***, and other AFFO and financial statement errors were ***intentionally made***, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014."   (Ex. 9, at 3 (emphasis added).)   Accordingly, ARCP's admissions in the Restatement conclusively establish scienter with respect to the admitted AFFO overstatements and net loss understatements in the 2014 Quarterly Reports.   *See SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) ("Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter . . . ." (citing *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 45 (2d Cir. 2007))), *aff'd sub nom*, *SEC v. Altomare*, 300 F. App'x 70 (2d Cir. 2008).   Indeed, the Restatement is an unadorned admission that certain of ARCP's senior corporate officers "intentionally engaged in manipulative conduct," *AUSA Life Insurance Co. v. Ernst & Young*, 206 F.3d 202, 221 (2d Cir. 2000), and ARCP cannot be heard to argue otherwise now.

McAlister's plea allocution, along with the facts adduced at Block's criminal trial, remove even the possibility of a genuine dispute of fact on the issue of scienter.   It is well settled that the state of mind of executives like a CAO or CFO is imputed to a corporate defendant like ARCP.   *See, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006) ("[C]ourts have readily attributed the scienter of management-level employees to corporate defendants."); *see also Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, No. 16-cv-80056, 2016 WL 9413421, at *8 (S.D. Fla. June 26, 2016) (vice president of compliance)*; In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 442-43 (S.D.N.Y. 2006) (referring to regional vice president and vice president of corporate finance).   McAlister has admitted that she knew the

2014 First Quarter Report would mislead investors about AFFO, but did nothing to correct or prevent that fraudulent report from being filed.  (SUF ¶ 45.)  Then, in connection with the 2014 Second Quarter Report, McAlister admitted that she "agreed to falsely inflate the AFFO calculation for the second quarter of 2014 and for the year to date 2014 that were to be reported in the filing," by "inflating numbers for a particular line item that had no valid basis . . . ."  (SUF ¶ 46.)  McAlister and Block intentionally "inflated the figures to hide the first quarter error and to create the appearance that the company's performance was in line with analyst expectations and on track to meet the company's full year AFFO guidance."  (SUF ¶ 47.)  They "plugged" a false AFFO number into the 2014 Second Quarter Report, even though McAlister knew at the time that "[y]ou just can't plug numbers.  You have to have analysis and basis that ties back to books and records."  (SUF ¶ 55.)

McAlister and Block did so to meet ARCP's AFFO forecast, by putting in the "exact number" ARCP required "so that the AFFO and AFFO per share calculated to what it needed to be."  (SUF ¶ 54.)  These were, in the words of McAlister, ARCP's chief accountant, "result driven" misstatements.  (SUF ¶ 52.)  And, as McAlister admitted during Block's criminal trial, ARCP's former CEO Schorsch participated in Block's and McAlister's intentional manipulations in advance of filing the 2014 Second Quarter Report.  (SUF ¶ 51.)  This is an admission of actual intent to mislead investors for the Company's benefit, which is consistent with the Company's own admissions in the Restatement.  Unsurprisingly, Judge Oetken found in Block's related criminal proceeding that "Block's actions fall squarely within the scope of criminal conduct that is attributable to" ARCP.  *See Block*, 2018 WL 722854, at *2-3 ("The test is whether the agent is performing acts of the kind which he is authorized to perform and those acts are motivated -- at

least in part -- by an intent to benefit the corporation." (quoting *United States v. Agosto-Vega*, 617 F.3d 541, 552-53 (1st Cir. 2010))).

For these same reasons, scienter in connection with the Company's internal controls misstatements is beyond genuine dispute. Schorsch, Block and McAlister certified to investors that ARCP's internal accounting "disclosure controls and procedures" were "effective," yet ARCP admitted in the Restatement that its "senior management" intentionally made material misstatements in the 2014 Quarterly Reports. (SUF ¶ 14.) In light of these admissions, ARCP cannot raise a genuine dispute that its misstatements regarding internal controls were intentionally or recklessly made.

## IV.   <u>CONCLUSION</u>

As set forth above, and in light of ARCP's unequivocal admissions in the Restatement, the Direct Action Plaintiffs are entitled to partial summary judgment against ARCP as follows:

- As to falsity in connection with the Direct Action Plaintiffs' Section 10(b), common law fraud, and Section 18 claims based on (as applicable) the admitted AFFO, net loss, and internal controls misstatements in the 2013 First Quarter Report; 2013 Second Quarter Report; 2013 Third Quarter Report; 2013 Annual Report; 2014 First Quarter Report; and 2014 Second Quarter Report; and

- As to scienter in connection with the Direct Action Plaintiffs' Section 10(b) and common law fraud claims based on the false and misleading 2014 First Quarter Report and 2014 Second Quarter Report.

DATED:   March 28, 2018

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER                    LOWENSTEIN SANDLER LLP
  & GROSSMANN LLP

By: _____                  By: _____
Salvatore J. Graziano                        Lawrence M. Rolnick
Mark Lebovitch                               Marc B. Kramer
Jonathan D. Uslaner                          Thomas E. Redburn, Jr. (*pro hac vice*)
David Kaplan (*pro hac vice*)                Sheila A. Sadighi (*pro hac vice*)
Jacob T. Spaid (*pro hac vice*)              Michael J. Hampson
1251 Avenue of the Americas                  Brandon M. Fierro
New York, New York 10020                     1251 Avenue of the Americas
Tel:   (212) 554-1400                        New York, New York 10020
Fax:   (212) 554-1444                        Tel:   (212) 262-6700
sgraziano@blbglaw.com                        Fax:   (212) 262-7402
MarkL@blbglaw.com                            lrolnick@lowenstein.com
JonathanU@blbglaw.com                        mkramer@lowenstein.com
DavidK@blbglaw.com                           tredburn@lowenstein.com
Jacob.Spaid@blbglaw.com                      ssadighi@lowenstein.com
                                             mhampson@lowenstein.com
                                             bfierro@lowenstein.com

*Attorneys for Plaintiffs in the Twin Capital,*
*HG Vora, BlackRock, PIMCO, Clearline,*
*Pentwater, Eton Park, and Reliance Standard*    *Attorneys for Plaintiffs in the Jet Capital,*
*Actions*                                        *Archer Capital, Atlas and Fir Tree Actions*